## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**SARAH L JONES,**

   **Plaintiff,**

**v.**            **Case No:  6:11-cv-1793-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

   **Defendant.**

_____

# MEMORANDUM OF DECISION

 Sarah L. Jones (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1.  Claimant maintains that the final decision of the Commissioner should be reversed and remanded because the Administrative Law Judge (the "ALJ") erred by: 1) lacking substantial evidence to support the residual functional capacity (the "RFC") assessment; 2) failing to account for Claimant's moderate limitations in concentration, persistence, and pace, and moderate limitations in social functioning in the ALJ's hypothetical question to the Vocational Expert (the "VE"); and 3) lacking substantial evidence to find Claimant's subjective statements not entirely credible.  Doc. No. 19 at 9-19. For the reasons set forth below, the final decision is **AFFIRMED**.

## I.  BACKGROUND.

 Claimant was born on August 21, 1963, and has a general education diploma ("GED"). R. 38.  Claimant has past-relevant work as a dental assistant, and a variety of other part-time jobs that do not amount to substantial gainful activity.  *See* R. 17, 24, 39-43, 63-64, 177-80, 283-84.

On August 30, 2006, and July 7, 2008, Claimant filed applications for benefits ultimately alleging an onset of disability as of January 1, 2008.  R. 149-55.  Claimant alleges disability due to neck and shoulder pain, degenerative disc disease, muscle spasms, arthritis, chronic obstructive pulmonary disease ("COPD"), anxiety disorder, panic attacks, hallucinations, headaches, and high blood pressure.  R. 84, 91, 168, 230, 262.

## II.   MEDICAL AND OPINION EVIDENCE.

The medical and opinion evidence set forth below is narrowly tailored to the issues Claimant has raised on appeal.  The record does not contain any medical source opinion from a treating physician regarding Claimant's ability to perform work related functions. The record contains one medical source opinion from a consultative examining physician, Dr. Alvan Barber, who opines that Claimant: "can walk, stand, and sit for reasonable periods of time"; "can use upper body movements and coordinated activities with hands"; and has obesity which is possibly exacerbating her symptoms.  Doc. No. 509-13.  Dr. Barber did not provide a function-by-function analysis of what Claimant can still do despite her impairments and, therefore, the ALJ ultimately did not give Dr. Barber's opinion great weight.  R. 23, 513.[1]  The record contains two non-examining physical RFC opinions, two non-examining mental RFC assessments, and two non-examining psychiatric review techniques ("PRT").  R. 437-62, 491-508, 519-26.  With the exception of a limitation to low demand settings contained in the two mental RFC assessments, and which will be discussed in greater detail below, none of the medical source opinions contain limitations greater than those ultimately adopted by the ALJ.  R. 437-62, 491-513, 519-26.[2]

---

[1] Claimant raises no issues with respect to the ALJ's treatment of Dr. Barber's opinion.  Doc. No. 19.
[2] The non-examining physical RFC opinions provide that Claimant can perform a greater level of exertional work, i.e., light work; than the ALJ ultimately found in the RFC, i.e., sedentary work.  Compare R. 20 with R. 455-62, 519-26.

A September 18, 2007, magnetic resonance imaging ("MRI") of the cervical spine revealed spinal canal narrowing and disc protrusions of the C3-4, C4-5, C5-6, and C6-7, but no cord impingement or edema.  R. 319-320.  The impression was degenerative spondylosis resulting in spinal canal narrowing and touching of the anterior cord at the C6-7 level, moderate to severe left sided and moderate right sided C6-7 level foraminal narrowing secondary to uncovertebral joint bone spur formation, and disc protrusions indenting the anterior thecal sac with spinal canal narrowing and no cord impingement at the C3-4 and C4-5 levels.  R. 320.  On December 1, 2009, an x-ray of the cervical spine revealed "early multilevel degenerative disc disease with multilevel endplate changes and mild decrease of the C6-7 intervertebral space with associated endplate changes and early osteophyte formation."  R. 719.  On May 11, 2011, an MRI of the cervical spine revealed a normal signal, "stable degenerative spondylosis with disc space narrowing and disc desiccation at C5-C6," and "straightening of the cervical lordosis," but no cord impingement, compression or edema at any level.  R. 966-67.[3]

### A.  Dr. Theodore Weber, Psy.D – September 5, 2008.

On September 5, 2008, Dr. Theodore Weber, a psychologist, provided a non-examining Psychiatric Review Technique ("PRT") and a mental RFC based upon a review of the medical records.  R. 437-54. In the PRT, Dr. Weber opines that Claimant suffers from schizoaffective disorder, bipolar disorder, general anxiety disorder, and polysubstance abuse in remission.  R. 441-49.   Dr. Weber opines that Claimant's impairments result in moderate difficulties maintaining concentration, persistence or pace, and in maintaining social functioning.  R. 451. Dr. Weber provides a detailed review of the medical record.  R. 453.

---

[3] The May 11, 2011, MRI was submitted for the first time to the Appeals Council.  R. 4, 966-67.  Claimant does not raise any issue on appeal with respect to the additional evidence presented to the Appeals Council.  Doc. No. 19.

In Section I of his mental RFC, Dr. Weber opines that Claimant is moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to set realistic goals or make plans independently of others. R. 437-38.  In all other areas, Dr. Weber opines that Clamant is not significantly limited.  R. 437-38.  Dr. Weber ultimately concludes:

> [Claimant] reports she has panic attacks and does not function well in crowds.  No problems performing personal hygiene, makes notes and reminders to self, cooks simple meals daily, completes [household] chores, rides lawnmower, light housekeeping, drives and can go out alone, is able to count change and use a check book, reports she can follow written instructions well, has difficulty [with] focus, and does not handle stress well.  [Claimant] can avoid routine hazards, travels as able, goes out alone.
>
> [Third-party] reports [Claimant] has anxiety every 2 months, attacks last 3-4 days, relieved [with] rest and medication.  Reports [Claimant] is depressed [regarding Claimant's] failing health.  Is able to perform personal hygiene, use pill box as reminder for meds, makes sandwiches and very few complete meals daily, cleans 1x week, needs reminders at times, drives, can go out alone, shops, bounces check book due to lack of money, reads daily, has difficulty finishing projects, and is able to follow instructions with difficulty at times.
>
> Overall evidence supports [Claimant] has some mild-moderate limitations in social functioning and mild-moderate limitations in [concentration, persistence, or pace] due to psych[ological] symptoms.  <u>[Claimant] is capable of performing routine tasks in low demand setting [with] little social interaction</u>.  [Claimant] has remote [history of] substance abuse [with] continued pain medications that may also limit functional abilities if [Claimant] does not take as prescribed.  Evidence supports [claimant] has been stabilized [with] medication in past and has recent exacerbation of [symptoms] due to financial situations and chronic pain.

R. 439 (emphasis added).   Thus, Dr. Weber ultimately opines that despite Claimant's impairments, she is capable of performing routine tasks in a low demand setting with little social interaction.  R. 439.

**B.  Dr. Pamela Green, Ph.D.  – November 22, 2008.**

On November 22, 2008, Dr. Pamela Green, a psychologist, provided a non-examining PRT and mental RFC based upon a review of the medical records.  R. 491-508.  In the PRT, Dr. Green opines that Claimant suffers from schizoaffective disorder, bipolar disorder, generalized anxiety disorder, and polysubstance abuse disorder in remission.  R. 491-499. Dr. Green opines that Claimant's impairments result in moderate difficulties in maintaining concentration, persistence, or pace, and in social functioning.  R. 501.  Dr. Green provides a detailed review of the medical record.  R. 503.

In Section I of the mental RFC, Dr. Green opines that Claimant is moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work day and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to set realistic goals or make plans independently of others. R. 505-06.   In all other, Dr. Green states that Claimant is not significantly limited.  R. 505-06. Dr. Green ultimately concludes:

> [Claimant] reports panic attacks and does not function well in crowds. . . . [Third party] reports [Claimant] may have difficulty finishing projects, and is able to follow instructions with difficulty at times.   Overall evidence support [Claimant] has some mild-moderate limitations in social functioning and mild-moderate limitations in [concentration, persistence, or pace] due to psychological symptoms.   [Claimant] is capable of performing

<u>routine tasks in low demand settings with little social interaction</u>. . . .

R. 507 (emphasis added).  Thus, Dr. Green's opinion is identical to Dr. Weber's opinion and provides that Claimant is capable of performing routine tasks in low demand settings with little social interaction.  R. 507.

### III.   <u>ADMINISTRATIVE PROCEEDINGS</u>.

Claimant's application was denied initially and upon reconsideration.  R. 73-76, 80-94. Claimant requested a hearing before an ALJ and, on June 3, 2010, a hearing was held before ALJ Robert D. Marcinkowski.  R. 34-79.  Claimant and VE Jane Beougher were the only persons to testify at the hearing.  R. 34-35.

At the hearing, the ALJ asked the VE whether an individual with the same age, education, and work history as the Claimant, and who is limited to sedentary work; avoiding concentrated exposure to extreme cold, extreme heat, and moderate exposure to fumes, odors, and dust; and simple, routine task with only occasional social interaction with others could perform Claimant's past-relevant work.  R. 64-67.  The VE testified that such an individual could not Claimant's past work, but could perform other work as a ticket counter, Dictionary of Occupational Titles (the "DOT") No. 219.578-010, and as a surveillance system monitor, DOT No. 379.367-010.  R. 67.  Claimant's counsel then asked the VE if that same individual was also limited to working in a low demand setting could they perform that work.  R. 69.  The VE testified:

> Well, those are unskilled jobs, so I believe the stress would be less than higher scale jobs. [I]t would depended on the particular employer, but I believe a surveillance system monitor you are just looking for unusual things that might happen in a workplace or a transportation facility.  And the ticket counter you are just auditing tickets that were sold, so, in my opinion, I don't believe they would be that stressful.

R. 69-70.   Thus, although the VE stated that it would depend on the particular employer, an individual with a limitation to low demand settings should be able to work as a surveillance systems monitor and as a ticket counter because those jobs are unskilled and are not very stressful.  R. 69-70.

On June 18, 2010, the ALJ issued a decision finding that the Claimant has not been disabled since January 1, 2008, through the date of the decision. At step-two, the ALJ determined that Claimant has the following severe impairments: back disorder; cervical spine disorder; COPD; and an affective disorder.  R. 18.   The ALJ also determined that Claimant's mental impairments result in moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  R. 18-20.   With respect to Claimant's moderate limitations in maintaining social functioning, the ALJ stated:

> In social functioning, the claimant has moderate difficulties.   In July 2008, the claimant reported being in daily contact with others by phone but no other social interaction such as churches and social groups.  She reported no problems getting along with family, friends, neighbors, or others but did allege that she did not like crowds.  Although the claimant variously reported some need to be accompanied, she also reported going out alone on a daily basis, handling the household shopping with no reported problems with inevitable social interaction.  Moreover, the claimant continues to live with a boyfriend/roommate and thus is apparently able to maintain personal relationships.
>
> At the hearing, the claimant was able to interact appropriately with both the [ALJ] and her representative, despite her report of experiencing a panic attack since [that] morning.  The medical records reveal that the claimant is routinely viewed as alert, cooperative, and although sometimes somewhat anxious, no severity of symptoms was noted.  Even when the claimant is seen in the emergency room for complaints of anxiety in 2009, the physical examination reveals normal results with normal heart rate and rhythm, no respiratory difficulties such as hyperventilation, and essentially normal blood pressure.  One would expect the claimant to display some physical signs of anxiety if she felt the need to seek treatment at a hospital.  Despite her complaints of these attacks, the claimant was able to drive herself to and from the

> hospital.  One would assume that the treating sources would have recommended that the claimant either remain at the emergency room for longer periods (she was there for less than 30 minutes during one visit and less than 2 hours another) or call someone to driver her home if her symptoms were of any severity.[4]
>
> The State agency consultants, allowing for the [C]laimant's reports of anxiety and considering the mental health treatment, assessed an overall moderate limitation in regards to social functioning but in the functional capacity assessment both noted that the limitation was only mild-to-moderate.  Thus, according the claimant the full benefit of the doubt, the [ALJ] finds that the limitation in this area is moderate.

R. 19.   Thus, the ALJ based his findings of moderate limitations in maintaining social

functioning on Claimant's self-reported statements, the medical record, and the opinions of Drs.

Weber and Green.  R. 19.

With respect to Claimant's moderate limitations in concentration, persistence or pace, the

ALJ stated:

> [T]he claimant has moderate difficulties.  She reported in July 2008, that she could finish tasks and follow written instructions well but had some problems with concentration and following oral instruction.  By her later report of October 2008, the claimant alleged that she could only pay attention for "a few minutes" and did not finish tasks, but could follow oral instructions "ok." However, the claimant testified that she enjoys reading and has no difficulties following the story line.  She was able to remain attentive throughout the hearing, answering all questions without undue hesitation.  And although the hearing was not of undue length, this demonstrated adequate abilities in regards to concentration, persistence, and pace.
>
> The medical evidence continues to show that the claimant is viewed as alert and oriented, calm and cooperative, and displaying little in the way of any severity of symptoms.  During an examination of July 2009, the physician noted that the claimant displayed no significant memory impairment.  Despite her complaints of panic attacks for which she required emergency treatment, the claimant was still able to drive herself to and from these visits, indicative of adequate ability to focus during and

---

[4] Claimant raises no issue on appeal with respect to these particular statements.

immediately after experiencing a panic attack.  The claimant has reported the ability to prepare household meals, perform household chores, read without any problems with concentration, and evidently perform her current job on an adequate level for four hour periods of time.

The State agency consultants assessed a moderate limitation within the area of concentration, persistence, and pace due to psychiatric symptoms but in the more detailed functional capacity assessment, both noted that the limitation was only mild-to-moderate.  These mental health experts weighed the effects of claimant's pain medications in limiting her functionality yet noted her ability to complete chores, cook meals, care for herself, and venture out alone.

In consideration of the above, the [ALJ] finds that the claimant has no more than a moderate limitation in regards to concentration, persistence, and pace.

R. 19-20. Thus, the ALJ based his findings of moderate limitations in maintaining concentration, persistence or pace on Claimant's self-reported statements and testimony, the medical records, and the opinions of Drs. Weber and Green.  R. 19-20.  After discussing the ALJ's findings at step-two with respect to Claimant's moderate limitations in social functioning and concentration, persistence, or pace, the ALJ stated that the RFC assessment "reflects the degree of limitation the [ALJ] has found in the . . . mental function analysis."  R. 20.

The ALJ determined that Claimant retains the RFC to:

[P]erform sedentary work . . . with the following exceptions: limited to the avoidance of concentrated exposure to extreme heat or cold; limited to the avoidance of moderate exposure to fumes, dusts, and odor; limited to the performance of simple, routine tasks; and limited to occasional interaction with others.

R. 20.  Thus, among other limitations, the ALJ found that Claimant is limited to the performance of simple, routine tasks with occasional interaction with others.  R. 20.  In explaining how the ALJ arrived at the above RFC assessment, the ALJ provided a detailed review of the medical

record and opinion evidence.  R. 21-24.  The ALJ specifically discussed the September 18, 2007

MRI, stating that it:

> [R]evealed disc protrusions at C3-7 levels, but no cord impingement, compression, or edema.  Consequently, the claimant underwent a series of injections and received pain medications which she reported decreased her pain to 1-2/10.  However, no more intensive treatment was recommended or sought.  Moreover, the claimant reported reduced pain symptoms with the use of Lortab.

R. 21.  Thus, the ALJ characterized the September 18, 2007 MRI as revealing disc protrusions,

but no cord impingement, compression, or edema.  R. 21.

The ALJ summarized the Claimant's testimony as follows:

> The claimant testified that she has continued to work on a part time basis after her alleged onset date of disability as she allegedly cannot handle full time work due to her multiple impairments.  She alleged that she has difficulties with fine manipulations with objects "sometimes flying" out of her hands.  She cannot drive for long periods due to back and leg pain which she experiences constantly.  The claimant described numbness in the legs which worsened after a motor vehicle accident in December 2009 and some use of a cane.  She reported that she "sometimes" becomes short of breath due to COPD for which she uses a nebulizer and rescue inhaler.  Due to the effects of back and neck pain and COPD, the claimant estimated she could lift 10 pounds, walk ½ block, and stand for perhaps 20 minutes.  However, the claimant reported that she routinely walked her dog for 20 minutes at a time, at odds to her reported estimate of the ability to walk less than a block.  As regards her mental impairment, the claimant stated that she had problems dealing with customers, keeping up the required pace, and dealing with stress.  She reported hallucinations occurring at night, dizziness, and occasional black outs.

R. 21. After making the above RFC assessment and discussing the medical record, the ALJ

found that the Claimant's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms, however, the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the above [RFC] assessment."  R. 23.  Thus, the ALJ found that Claimant's

subjective statements are not credible to the extent they are inconsistent with the ALJ's RFC assessment.  R. 23.

The ALJ stated the following to support the credibility finding:

> In terms of the claimant's alleged inability to perform fine manipulations, the evidence is not supportive of her reports nor is there any indication that further testing has been recommended. Although there is objective evidence of some cervical and lumbar degeneration, nonetheless the claimant retains normal gait and station, good motion in the shoulders, and normal use of the upper extremities.  While the claimant testified at one point that she could walk only half a block, it is of some note that she later reported walking her dog for 20 minutes at a time, somewhat eroding her credibility.  She uses a cane as needed but there is no evidence that the cane is medically necessary.  With the evidence of good response to pain medications and only conservative treatment, a limitation to sedentary work is more than reasonable to accommodate the claimant's neck and back disorder as well as any affects due to non-severe obesity.  Event the claimant's report of activities of daily living would not preclude here from work within the above [RFC].

> The claimant reported that she experiences some difficulties with shortness of breath due to COPD.  However, but for some slight crackles and wheezing noted in July 2009, the physical examinations reveal no respiratory difficulties throughout 2008 and 2009.  There is no indication that the claimant has required or sought additional treatment for COPD since she was placed on medication in July 2009, suggestive that the claimant's symptoms of COPD are controlled with the use of medication.  However, due to the diagnosis, the [ALJ] has limited the claimant's exposure to temperature extremes and such irritants as dust, fumes, and odors.

R. 23.  Thus, the ALJ found Claimant's subjective statements not credible because: 1) there is no evidence supporting her allegations of fine manipulation limitations; 2) Claimant has demonstrated normal gait and station during examinations with good range of motion in the shoulders and upper extremities; 3) her testimony regarding her inability to walk more than ½ a block is contradicted by her testimony that she walks her dogs for twenty minutes; 4) the record reveals a good response to medications and conservative treatment; 5) the Claimant's reports of

activities of daily living do not conflict with the ALJ's RFC; and 6) the record does not suggest that Claimant's COPD impose limitations greater than those contained in the RFC.  R. 23.

As for the opinion evidence, the ALJ gave little weight to the physical RFC opinions because they opined that Claimant could perform light work.  R. 23.  The ALJ also gave Dr. Barber's opinions little weight because he did not provide a quantitative assessment of the Claimant's functionality.  R. 23.   With respect to Drs. Weber and Green, the ALJ stated:

> The State agency mental health consultants offered that the claimant would be limited to the performance of routine tasks in low demand settings with little social interaction.  Both consultants provided detailed notes on the evidence they use in their assessments and adequately weighed the medical evidence and the claimant's reported functionality.  As experts with knowledge of the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations, the opinions are deserving of great consideration.   With the detailed assessments supported by the evidence and in view of their concurrence of opinion, these assessments are rendered even more persuasive and thus are accorded great weight.

R. 24. Thus, the ALJ gave great weight to Drs. Weber and Green's opinion that Claimant is limited to routine tasks in low demand settings with little social interaction.  R. 24.  The ALJ concluded that the RFC "is supported by the opinions of [Drs. Weber and Green], in part by the opinion of Dr. Barber, and in consideration of the objective medical evidence."  R. 24.

At step-four, the ALJ, relying upon the DOT and VE's testimony, determined that Claimant cannot perform her past-relevant work.  R. 24. At step-five, relying upon the testimony of the VE, the ALJ determined that Claimant can perform work as a ticket counter and surveillance system monitor.  R. 25.  Accordingly, the ALJ found that Claimant is not disabled. R. 25.

On September 9, 2011, the Appeals Council denied Claimant's request for review.  R. 1-5.  On November 14, 2011, Claimant appealed the final decision of the Commissioner to the District Court.  Doc. No. 1.

## IV.   LEGAL STANDARDS.

### A.  THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 CFR §§ 404.1520(a), 416.920(a).  In Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.  THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## V.    ANALYSIS.

### A.  The RFC.

Claimant argues that the ALJ's RFC is not supported by substantial evidence for three reasons, each of which is addressed separately below.

#### 1.  Low Demand Settings.

Claimant maintains that the RFC is not supported by substantial evidence because, although the ALJ gave "great weight" to the opinions of Drs. Weber and Green, and accurately

characterized their opinions, the ALJ erred by failing to adopt their ultimate opinion that Claimant is limited to routine tasks <u>in low demand settings</u> with only occasional interaction with others. Doc. No. 19 at 11-12. In other words, Claimant argues that by failing to include a limitation to low demand settings in the RFC, and failing to explain any reason therefor, the ALJ's RFC is not supported by substantial evidence. *Id.*

The Commissioner rightly acknowledges that Drs. Weber and Green included a limitation to low demand settings in their opinions and that the "ALJ gave such opinions great weight because they are supported by the evidence." Doc. No. 21 at 10-11. The Commissioner goes on to state that such state agency opinions are entitled to great weight if they are supported by evidence in the record. Doc. No. 21 at 11. The Commissioner contends, however, that the ALJ was not required to adopt all of their limitations because the RFC is an assessment reserved for the ALJ. Doc. No. 21 at 11. Thus, the Commissioner argues that the ALJ did not err by failing to include a limitation to low demand settings.

Before considering step-four of the sequential evaluation process, the ALJ must first determine the Claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. The RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 CFR § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* The responsibility for determining a complainant's RFC rests solely with the ALJ. 20 CFR §§404.1513(b)(6) (". . . the lack of the medical source statement will not

make the report incomplete"); 20 CFR §§404.1527(e)(2), 416.927(e).[5]  In evaluating a claimant's residual functional capacity, the ALJ is obligated to consider all of the claimant's impairments, including subjective symptoms such as pain.

In this case, the ALJ's RFC limits the Claimant, among other limitations, to simple, routine tasks and occasional interaction with others, but the ALJ does not include a limitation to low demand settings.  R. 20.  Nevertheless, the ALJ clearly based this portion of the RFC assessment on the opinions of Drs. Weber and Green.  R. 24.  The ALJ even notes that they opined that "claimant would be limited to the performance of routine tasks in low demand settings with little social interaction."  R. 24.  The ALJ gives great weight to their opinions because they provided detailed notes to the medical record and claimant's self-reported statements regarding her functionality, they are supported by the record evidence, and because they concur with each other.  R. 24.

Because the ALJ did not explain his analysis of their opinion that Claimant is limited to low demand settings, it is unclear whether the ALJ rejected that limitation or mistakenly failed to include it in his RFC.  While the RFC is reserved for the Commissioner, the ALJ is required to state with particularity the weight given to the medical opinions of record and the reasons therefor.  *See Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  If the ALJ rejected the limitation to low demand settings, the ALJ was required to articulate good cause for such a finding, and the failure to do so is error.  *Id.*

---

[5] The regulations provide: "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your [RFC] . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved for the Commissioner." 20 CFR § 404.1527(e)(2).
.

Nevertheless, even assuming such an error, any error with respect to the limitation to low demand settings is harmless.  At step-five, based upon the testimony of the VE, the ALJ found that Claimant retains the ability to work as a ticket counter and surveillance systems monitor.  R. 25.  At the hearing, Claimant's counsel asked the VE whether an individual with the Claimant's RFC could work as a ticket counter and surveillance systems monitor if a limitation to low demand settings was added to the RFC, and the VE ultimately responded that such an individual could perform that work.  R. 69-70.  Therefore, even if a limitation to low demand settings was added to the RFC it would not preclude Claimant from working as a ticket counter or surveillance systems monitor.

Similarly, in *Young v. Astrue*, 2012 WL 3962399 at *8 (S.D. Fla. Sept. 10, 2012), the ALJ failed to include a limitation to occasional stooping in the RFC.  The District Court held that any error by the ALJ was harmless because the ALJ asked the VE a second hypothetical question that included that limitation and the VE responded that such an individual would be capable of performing the work identified by the VE in the first hypothetical question.  *Id*.  Thus, any error by the ALJ in failing to include the additional limitation in the RFC was harmless because the result would be the same, *i.e.*, the Claimant could still perform the work identified by the VE.  *Id*. The Court finds *Young* persuasive and concludes that any error committed by the ALJ with respect to the limitation to low demand settings is harmless.  Accordingly, this argument is rejected.

### 2.  The September 18, 2007 MRI.

Claimant also argues that the RFC is not supported by substantial evidence because the ALJ allegedly mischaracterized the September 18, 2007 MRI.  Doc. No. 19 at 10-11.  Claimant maintains that the September 18, 2007 MRI report showed "more significant findings" than the

ALJ reported and, therefore, Claimant suggests that "[i]f the ALJ would have accurately characterized the findings of the MRI, perhaps he would have reached a different conclusion in regards to the [RFC]." Doc. No. 19 at 11. Claimant fails to cite to any legal authority for this position on appeal. Doc. No. 19 at 10-11.

Claimant's argument is rejected for two principal reasons. First, the ALJ accurately reported the findings of the September 18, 2007 MRI report in the decision. *Compare* R. 21 *with* R. 319-320. Although the ALJ did not recite verbatim the report's findings, the ALJ accurately stated that it revealed disc protrusions at the C3-7 levels, but no cord impingement, compression, or edema. R. 21, 319-20. *See also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11 t h Cir. 2005) ("There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so the ALJ's decision . . . is not a broad rejection which is not enough to enable [this Court] to conclude that [the ALJ] considered [the] medical condition as a whole."). Second, the December 1, 2009 x-ray and May 11, 2011 MRI are also consistent with the September 18, 2007 MRI and show no worsening of Claimant's condition. R. 719, 966-67. The May 11, 2011 MRI shows a normal signal, "stable degenerative spondylosis with disc space narrowing and disc desiccation at C5-C6," and "straightening of the cervical lordosis," but no cord impingement, compression, or edema at any level. R. 966-67. Accordingly, because Claimant has not demonstrated that the ALJ mischaracterized the September 18, 2007 MRI report or that Claimant's worsened, the Claimant's argument is rejected.

### 3.   Section I Mental RFC Findings.

Claimant further contends that the RFC is not supported by substantial evidence because the ALJ failed to include or explain his decision not to include in the RFC Drs. Weber and Green's findings in Section I of their mental RFC assessments. Doc. Nol. 19 at 12-13. The

Commissioner maintains that the ALJ did not err because the Section I findings are only a summary of findings and the doctors' ultimate opinion is contained in a separate portion of the mental RFC assessment, which the ALJ specifically discussed and gave great weight. Doc. No. 21 at 8-10 (citing Program Operations Manual System ("POMS") DI 24510.060(B)(2)(a) ("Section I is merely a worksheet aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment.")).

In *Jones v. Commissioner of Social Security*, 478 Fed.Appx. 610, 612-13 (11th Cir. 2012) (unpublished), the Eleventh Circuit considered and rejected a similar argument. *Id.*[6] In *Jones*, 478 Fed.Appx. at 612, the claimant argued that the ALJ's RFC that he could perform and carry out simple and repetitive instructions and tasks on a sustained basis was not supported by substantial evidence because two evaluating doctors checked a box on their mental RFC assessments indicating that he was moderately limited in the ability to complete a normal workday or workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* The Eleventh Circuit stated:

> This argument is also unavailing because it does not consider "*all* of the relevant medical and other evidence" that was before the ALJ. The Social Security Administration's Programs Operations Manual System (POMS) clarifies that the boxes checked by Dr. Zelenka and Dr. Bee are only part of a worksheet that "does not constitute the [doctors' actual] RFC assessment." Checking the box "Moderately Limited" means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation. After checking the boxes as an "aid," a doctor is then required to detail his actual RFC assessment. *Id.*
>
> Consistent with these directives, both Dr. Zelenka and Dr. Bee, after checking the various boxes, elaborated on their opinions regarding Jones's ability to concentrate. Dr. Zelenka explained that Jones has "occasional" problems with his attention span, but that he otherwise "retains adequate mental ability to carry out simple instr[uctions] and to relate adequately to others in a routine

---

[6] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

work setting."   Similarly, Dr. Bee stated that Jones "may" have "occasional lapses in concentration and efficiency," but that he otherwise "appears mentally capable of well structured task activity."  These opinions tend to support the ALJ's finding.

. . . .

At this juncture, it bears repeating that "[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."   Rather, the question that we must answer is whether there is "more than a scintilla" of evidence such that "a reasonable person would accept [it] as adequate to support [the ALJ's] conclusion."    Because the answer is yes, the Commissioner's decision must be affirmed.

*Id.* (emphasis in original) (internal citations omitted).   Thus, the Eleventh Circuit indicated that

checking a box in Section I of an RFC assessment form indicating the claimant is moderately

limited does not constitute the doctor's actual RFC assessment and is merely an aid that requires

the doctor to "detail his actual RFC assessment."   *Id.*

As set forth above, both Drs. Weber and Green checked the box in Section I of their

mental RFC assessments indicating that Claimant is moderately limited in the ability to

understand and remember detailed instructions, carry out detailed instructions, to maintain

attention and concentration for extended periods, complete a normal workday or workweek

without interruptions and to perform at a consistent pace without an unreasonable number and

length of rest periods, get along with coworkers or peers without distracting them or exhibiting

behavioral extremes, and to set realistic goals or make plans independently of others.  R. 437-38,

505-06.  Nevertheless, their ultimate conclusions were that despite Claimant's mental limitations

she retained the ability to perform routine tasks in low demand settings with little social

interaction.  R. 439, 507.  The ALJ gave great weight to those opinions and adopted an RFC

which limits the Claimant to simple, routine tasks with only occasional interaction with others.

R. 20, 24.   Finding *Jones* persuasive, the Court concludes that the ALJ's RFC assessment is supported by substantial evidence.   Accordingly, the Court rejects this argument.

### B.  Concentration, Persistence, or Pace, and Social Interaction.

The Claimant makes two separate arguments with respect to the ALJ's hypothetical question to the VE.   First, the Claimant generally argues that, based on the issues presented above with respect to the RFC, the ALJ's hypothetical question did not include all of Claimant's limitations.   Doc. No. 19 at 13-17.   In other words, Claimant contends that because the RFC should have included additional limitations such as a limitation to low demand settings the hypothetical question to the VE is incomplete.   *Id*.   Because the issues with respect to the RFC have been rejected above, the Court also rejects this argument.

Second, the Claimant specifically argues that the ALJ erred by failing to include moderate limitations in concentration, persistence, or pace, and moderate limitations in social functioning in the hypothetical question to the VE.   Doc. No. 19 at 13-17.   "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011), the Eleventh Circuit held that an ALJ may not generally account for a claimant's limitations in maintaining concentration, persistence, or pace by restricting the hypothetical question to simple, routine tasks, or unskilled work.   *Id*.   In *Winschel*, 631 F.3d at 1181, Court found that:

> In this case, the ALJ determined at step-two that [claimant's] mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace.   But the ALJ did not indicate that medical evidence suggested [claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical question. . . .

> Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the claimant's] impairments, the vocational expert's testimony is not "substantial evidence" and cannot support the ALJ's conclusion that [the claimant] can perform significant numbers of jobs in the national economy.

*Id.*  Thus, because the ALJ in *Winschel* did not indicate that the medical evidence suggested the claimant could still work despite limitations in maintaining concentration, persistence or pace, nor did the ALJ otherwise implicitly account for the limitation in the hypothetical question, the Eleventh Circuit remanded the case for the ALJ to pose a hypothetical question to the vocational expert which specifically accounted for the claimant's moderate limitations in maintaining concentration, persistence, and pace.  *Id.*

In *Scott v. Commissioner of Social Security*, 2012 WL 5358868 at *2 (11th Cir. Oct. 31, 2012), the Eleventh Circuit more recently clarified that:

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.  Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

*Id.* (quoting *Winschel*, 631 F.3d at 1180-81).[7]  The court held that the ALJ correctly found the medical evidence showed Scott could complete simple tasks on a regular basis and adequately accounted for his moderate limitations in concentration, persistence, or pace by limiting his hypothetical to work that would require low stress, simple, unskilled, one, two or three step instructions.   *Id.*  Thus, where the medical evidence demonstrates that a claimant can still engage in simple, routine tasks or unskilled work despite limitations in maintaining

---

[7] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

concentration, persistence, or pace, or the ALJ otherwise accounts for such limitations in the hypothetical question to the vocational expert, the ALJ has adequately addressed such limitations. *Id.  See also Jarrett v. Commissioner of Social Security*, 422 Fed.Appx. 869, 871-72 (11th Cir. 2011) (unpublished) (citing *Winschel*, 631 F.3d at 1181); *Dawson v. Commissioner of Social Security*, Case No. 6:11-cv-1128-Orl-31KRS, 2012 WL 1624267 at *2 (M.D. Fla. May 9, 2012) (*Winschel* "did not hold that limitations in concentration, persistence, or pace can never be accounted for by a functional limitation to performing simple, routine tasks or unskilled work.").

In this case, the ALJ, relying upon Claimant's self-reported statements, generally good mental status examinations, findings that show Claimant was routinely alert, calm, and cooperative with no significant memory problems, and the opinions of Drs. Weber and Green, specifically found at step-two that the Claimant has moderate limitations in the ability to maintain concentration, persistence, or pace, and in social functioning. R. 19-20.  In determining the Claimant's RFC, the ALJ provided a detailed review of the mental health treatment records and gave great weight to the opinions of Drs. Weber and Green that despite Claimant's mental impairments she is capable of performing routine tasks in low demand settings with occasional interaction with others. R. 22, 24.[8]  With the exception of the limitation to low demand settings, which is discussed above, the ALJ adopted an RFC limiting the Claimant to simple, routine tasks with only occasional interaction with others. R. 20.  The ALJ's hypothetical question to the VE also included a restriction to simple, routine tasks with only occasional social interaction with others.  R. 64-67. The evidence relied upon by the ALJ is sufficient to support the conclusion that despite moderate limitations in concentration, persistence, or pace, and in social interaction, Claimant can perform simple, routine task with only occasional social interaction.  R. 19-20, 22, 24, 437-54, 491-508.  The ALJ also sufficiently accounted for Claimant's moderate limitations in

---

[8] The record contains no opinions which contradict the opinions of Drs. Weber and Green.

the ability to maintain concentration, persistence, or pace and in social interaction by restricting the hypothetical question to simple, routine tasks with only occasional social interaction with others.   Accordingly, the Court rejects this argument.

### C. Credibility.

Claimant argues that the ALJ's credibility determination is not supported by substantial evidence because it is based on Claimant's reports of activities of daily living, which alone are not sufficient to find a Claimant not credible.  Doc. No. 19 at 18.   In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.   By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).[9]  "20 CFR § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); 20 CFR § 404.1529.[10]  Thus once the pain standard

---

[9] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

[10] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about

is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.*

In this case, the ALJ found Claimant's subjective statements not credible because: 1) there is no evidence supporting her allegations of fine manipulation limitations; 2) Claimant has demonstrated normal gait and station during examinations with good range of motion in the shoulders and upper extremities; 3) her testimony alleging an inability to walk more than half a block is contradicted by her testimony that she walks her dogs for twenty minutes; 4) the records reveals good responses to medication and conservative treatment; 5) Claimant's reports of daily activities do not conflict with the RFC; and 6) the records regarding Claimant's COPD do not suggest limitations greater than those contained in the RFC. R. 23. Thus, the ALJ did not, as Claimant implicitly suggests, find Claimant's statements not credible based solely upon her reports of activities of daily living. Claimant raises no issues with respect to the other reasons

---

symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

offered by the ALJ and, after having carefully reviewed the entire record, the Court finds that they are supported by substantial evidence. Accordingly, the Court rejects this argument.

## VI.    CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1.    The final decision of the Commissioner is **AFFIRMED**; and

2.    The Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

**DONE AND ORDERED** in Orlando, Florida on February 25, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Offices of Shea A. Fugate
P.O. Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Robert D. Marcinkowski
Administrative Law Judge

c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801